UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE GOODYEAR TIRE & RUBBER COMPANY, | ) ) ) | CASE NO. 5:13 cv 2465 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | MEMORANDUM OPINION |
| LOCKHEED MARTIN CORPORATION, | ) ) ) ) | |
| DEFENDANT. | ) | |

In this action for indemnification, Goodyear Tire & Rubber Company (Goodyear) claims it is entitled to recover from defendant Lockheed Martin Corporation (Lockheed) litigation expenses and attorney fees that Goodyear incurred in a case previously brought by Lockheed against Goodyear in the Northern District of Ohio that is now fully resolved.[1] Soon after the instant case was filed, both sides filed dispositive motions, in which each submits that the issue before the Court may be decided as a matter of law.[2] The motions are fully briefed and ripe for decision.

---

[1] N.D. Ohio, Case No. 5:10 cv 673 (the Airdock Litigation), and U.S. Court of Appeals for the Sixth Circuit, Case No. 12-4108 (the Airdock Appeal)—collectively, the "Prior Actions."

[2] Lockheed filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and Goodyear filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 12(d), the parties were notified that Lockheed's motion to dismiss would be treated as a motion for summary judgment and given an opportunity to present additional materials. *See* Minutes of proceedings September 9, 2014.

For the reasons that follow, Goodyear's motion for summary judgment (Doc. No. 17)[3] is denied, and Lockheed's motion (Doc. Nos. 8 and 9)[4] is granted.

## I. BACKGROUND

A.  **The Airdock Litigation[5]**

In the Airdock Litigation, Lockheed asserted federal and state law claims against Goodyear to recover costs for remediating environmental contamination of a property that Lockheed claimed was caused by Goodyear. (Airdock Litigation, Second Amended Complaint [SAC], Doc. No. 75.) Lockheed and Goodyear filed cross-motions for summary judgment on Lockheed's second amended complaint, and the district court granted judgment in favor of Goodyear. (Airdock Litigation, Memorandum Opinion [Mem. Op.], Doc. No. 108.[6]) Because the Airdock Litigation is the basis for Goodyear's present action, a brief summary of the facts drawn from the memorandum opinion of the district court granting Goodyear's motion for summary judgment provides background context for the Court's decision today.

In 1987, Loral Corporation (Loral) acquired the assets of Goodyear Aerospace Corporation (GAC),[7] a wholly owned subsidiary of Goodyear, pursuant to an

---

[3] Lockheed opposed Goodyear's motion (Doc. No. 23) and Goodyear replied (Doc. No. 24).

[4] Goodyear opposed Lockheed's motion (Doc. No. 18) and Lockheed replied (Doc. No. 22).

[5] The parties agree that the Court may take judicial notice of filings in the underlying Prior Actions.

[6] The district court's memorandum opinion in the Airdock Litigation is filed in the instant action as an attachment to Goodyear's complaint. (Doc. No. 1-5.) However, because the document header from the Airdock Litigation was not removed prior to filing the document in this case, the page identification number generated by the Court's ECF system is not legible. Therefore, when referencing the district court's memorandum opinion in the Airdock Litigation the Court will refer to Airdock Litigation Doc. No. 108.

[7] Goodyear Aircraft Corporation was renamed Goodyear Aerospace Corporation in 1963. The district court in the Airdock Litigation referred to both Goodyear Aircraft Corporation and Goodyear Aerospace Corporation as GAC.

2

Asset Purchase Agreement (Doc. No. 1-1 [APA]). (Mem. Op. at 6535.[8]) Goodyear, GAC and Loral were parties to the APA. As part of the acquisition, Goodyear transferred ownership to Loral of a dirigible hangar in Akron, Ohio, known as the Airdock. (Mem. Op. at 6537.)

The Airdock was originally constructed in 1929 by Goodyear Zeppelin Corporation (GZC). Material used in the construction of the Airdock contained polychlorinated biphenyls (PCB or PCBs).[9] (Mem. Op. at 6534; Sixth Cir. Op., Doc. No. 1-7, at 117-18.)

Goodyear acquired the Airdock from GZC in 1940. Shortly thereafter, Goodyear leased the Airdock to GAC for GAC's operations through a series of leases (the Leases). (Mem. Op. at 6534-35.) Goodyear owned the Airdock until 1987, when it transferred ownership to Loral pursuant to the APA. Lockheed acquired all of Loral's obligations under the APA, and the Airdock, when it merged with Loral in 1997. *Id.*

Years later, Lockheed discovered that the Airdock and surrounding areas were contaminated with PCBs. Lockheed self-reported the contamination to the Environmental Protection Agency (EPA) and entered into a Consent Agreement with the EPA regarding remediation of the contaminated site. (Mem. Op. at 6537.) Lockheed expended tens of millions remediating the PCB contamination, and anticipates spending millions more to remove and dispose of PCB contaminated Airdock materials when Lockheed ceases to use the Airdock.

---

[8] All references to page numbers are to the page identification numbers generated by the Court's electronic docketing system.

[9] Goodyear did not challenge on appeal this finding of fact by the district court. (*See* Airdock Appeal, Brief of Defendant-Appellee, Doc. No. 39 at 7 [Statement of Issues].)

The primary issue before the district court on the parties' cross motions for summary judgment in the Airdock Litigation was whether Lockheed contractually assumed Goodyear's environmental liabilities for the Airdock pursuant to the APA. (Mem. Op. at 6542.) The district court interpreted the APA under Ohio law, and concluded that the contract language was not ambiguous and the only reasonable interpretation of the contract was that Loral's assumption of the "liabilities of GAC" included liability for the Airdock conveyed by Goodyear to Loral as part of Loral's acquisition of the "assets of GAC." (Mem. Op. at 6545.) Holding as a matter of law that Lockheed assumed Goodyear's liabilities for the Airdock pursuant to the APA, the district court granted Goodyear's motion for summary judgment on Lockheed's second amended complaint. (Mem. Op. at 6546.) The Sixth Circuit Court of Appeals affirmed the district court's ruling. (Sixth Cir. Op.)

**B.      Goodyear Demands Indemnification from Lockheed**

Section 6.19.2 of the APA contains Loral's obligations to indemnify Goodyear—obligations which were assumed by Lockheed in the merger. (APA at 72-74.) Pursuant to this provision, Goodyear now seeks to recover from Lockheed over $2 million dollars in litigation expenses and attorney fees Goodyear incurred in the Prior Actions. (Doc. Nos. 1-2 and 1-8.)

## II. DISCUSSION

**A.      Summary Judgment Standard of Review**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its resolution affects the outcome of the lawsuit under the

4

governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. *Id.*

The moving party must provide evidence to the court which the movant believes demonstrates that there is the absence of a genuine dispute as to any material fact. Once the moving party meets this initial burden, the opposing party must come forward with specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Anderson*, 477 U.S. at 250. The nonmoving party may oppose a summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. at 324. General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Further, "'[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (*quoting Anderson*, 477 U.S. at 252).

When considering a motion for summary judgment, the Court must view all facts and evidence, and inferences that may be reasonably drawn therefrom, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962). However, the purpose is not to weigh evidence or determine the

truth of a matter, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

In summary, the district court's review on summary judgment is a threshold inquiry of determining whether there is the need for a trial due to genuine factual issues that must be resolved by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250. Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003).

**B.     Interpretation of APA Governed by Ohio Law**

The parties agree that the APA is a valid and binding agreement. Section 9.8 of APA provides that Ohio law governs contract construction.

As reflected in their cross-motions for summary judgment,[10] the parties have opposite views as to whether the Prior Actions trigger Lockheed's indemnification obligations under section 6.19.2 of the APA. Therefore, the Court's analysis begins with an interpretation of section 6.19.2 pursuant to Ohio law.

The role of the Court in interpreting a contract is to ascertain the intent of the parties, which is presumed to reside in the language they used in their agreement. *Savedoff v. Access Group, Inc.,* 524 F.3d 754, 763 (6th Cir. 2008) (quoting *City of St. Marys v. Auglaize Cty. Bd. of Commrs.*, 875 N.E.2d 561, 566 (Ohio 2007) and *Graham v.*

---

[10] Lockheed's motion advances multiple arguments as to why it is entitled to judgment as a matter of law, one of which is that the Prior Actions are not covered by section 6.19.2 because the claims did not arise out

6

*Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996)). "Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Id.* (citing *Parrett v. Am. Ship Bldg. Co.,* 990 F.2d 854, 858 (6th Cir. 1993) (applying Ohio law) (additional citations omitted).

When interpreting a contract, "the contract must be construed as a whole" in order to give "reasonable effect to every provision in the agreement." *Id.* at 763 (quoting *Tri-State Group, Inc. v. Ohio Edison Co.,* 782 N.E.2d 1240, 1246 (Ohio Ct. App. 2002) and *Stone v. Nat'l City Bank*, 665 N.E.2d 746, 752 (Ohio Ct. App. 1995)); *see also Saunders v. Mortensen*, 801 N.E.3d 452, 455 (Ohio 2004) ("We have long held that a contract is to be read as a whole and the intent of each part gathered from a consideration of the whole. If it is reasonable to do so, we must give effect to each provision of the contract.") (citing *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997))).

Contract language is ambiguous when its meaning cannot be determined from the four corners of the agreement, or when the language at issue is subject to two or more reasonable interpretations. *Savedoff,* 524 F.3d at 763 (quoting *Covington v. Lucia*, 748 N.E.2d 186, 190 (Ohio Ct. App. 2003)). Common words are to be given their plain and ordinary meaning unless a "manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." *Id*. at 764 (quoting *Alexander v. Buckeye Pipe Line Co.,* 374 N.E.2d 146, 150 (Ohio 1978)). "If a

---

of the operations of GAC subsequent to the Closing Date. (Lockheed's Motion for Summary Judgment, Doc. No. 9 at 181-83.)

contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio*, 474 N.E.2d 271, 272 (Ohio 1984).

"Indemnification agreements are generally enforced in Ohio unless enforcing them would be against public policy," and are interpreted the same way that courts interpret contracts. *Papatheodorou v. Clark*, 781 F. Supp. 2d 582, 586 (N.D. Ohio 2011) (citing *Glaspell v. Ohio Edison Co.*, 505 N.E.2d 264, 266 (Ohio 1987)). "[W]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* (quoting *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003)).

### C. The APA's Indemnification Provisions

Goodyear, GAC and Loral negotiated cross-indemnification provisions in the APA. Section 6.19.1 describes the terms of Goodyear's and GAC's indemnification obligations to Loral. Section 6.19.2 describes the terms of Loral's—now Lockheed's—indemnification obligations to GAC and Goodyear, and provides in relevant part:

> * * * Loral agrees to indemnify and hold GAC and Goodyear . . . harmless from and against and upon their respective demand to pay and reimburse them . . . *for any claim arising out of the operations of GAC subsequent to the Closing Date,* including without limitation, products manufactured by GAC after the Closing Date. * * *

(APA at 72-73 (emphasis added).)

Goodyear contends that the Airdock Litigation constitutes a claim by Lockheed against Goodyear arising out of the operations of GAC subsequent to the Closing Date of the APA in 1987, and falls squarely within the indemnification language of section 6.19.2. There is no disagreement between the parties, and the Court finds, that

8

the Airdock Litigation constituted a claim by Lockheed against Goodyear within the plain meaning of that term.

Goodyear interprets "operations of GAC after the Closing Date" to mean Lockheed's post-closing use of GAC's assets, and argues that the Airdock Litigation claims arose out of Lockheed's post-closing operations of the Airdock. Lockheed disputes whether the Airdock Litigation claims arose out of the "operations of GAC," but even if they did, Lockheed contends its claims against Goodyear arose before the Closing Date. The APA does not define "claim arising out of."

In order to interpret section 6.19.2, it is helpful to consider section 6.19.1 because the Court must construe the contract as a whole and give reasonable effect to each provision. Section 6.19.1 contains the terms of GAC's and Goodyear's indemnification obligations to Loral, and subsection (c) provides in relevant part that Goodyear and GAC will indemnify Loral for:

> (c) any *claims*, actions, suits or proceedings for personal injury or bodily injury, death . . . or under the Comprehensive Environmental Response, Compensation and Liability Act . . . or other federal, state or local laws . . . relating to contamination or adverse effect on the environment, . . . *caused by, attributable or relating to or arising out of the operation, use, control or ownership on or prior to the Closing Date* of the plants, facilities, sites, areas or properties listed in Schedule Q.

(APA ¶ 6.19.1(c), at 70-71 (emphasis added).)[11]

The language of section 6.19.1 is clear and unambiguous that determining whether a "claim, action, suit or proceeding" triggers Goodyear's indemnification obligation depends upon whether the claim was "caused by, attributable or relating to or

---

[11] Indemnification for environmental matters is included in section 6.19.1 and the Airdock is included on Schedule Q. (Goodyear Reply at 352.)

arising out of the operation, use, control or ownership [of the Airdock] prior to the Closing Date," and not when the claim was discovered or submitted to Goodyear pursuant to the post-closing timeframes of that section.[12] "Caused by," "attributable to," "relating to," and "arising out of" are strung together in section 6.19.1 as alternative pre-closing triggers for Goodyear's indemnification obligations.

The language at issue in section 6.19.2—"any claims arising out of the operations of GAC subsequent to the Closing Date"—is similar, but not identical, to section 6.19.1. But there is nothing in the APA to suggest that the "arising out of the operations" language in section 6.19.2 should be interpreted differently than section 6.19.1. That is, Lockheed's indemnification obligations are triggered by claims "caused by, attributable to or relating to or arising out of" the operations of the Airdock after 1987—not by claims caused by or attributable to or relating to Airdock operations prior to closing—even if those claims may not be discovered or asserted until after closing.

This interpretation of section 6.19.2 is the only reasonable construction that gives effect to both cross-indemnification provisions. GAC's and Goodyear's indemnification obligations to Loral would be meaningless unless those obligations for pre-closing events survived closing. Indeed those obligations were intended to survive closing because section 6.19.1 specifically establishes post-closing timeframes for submitting claims for indemnification to Goodyear and GAC. (APA at 71-72.) Further, if section 6.19.2 were interpreted to include any and all claims asserted post-closing as

---

[12] Section 6.19.1 conditions Loral's entitlement to indemnification upon claims for indemnification being submitted to Goodyear within certain required timeframes after the Closing Date. (APA at 71-72.) Indemnification claims submitted outside the permitted time frame for filing claims affect Lockheed's entitlement to indemnification, but not the analysis of when the claim arose.

"arising out of the operations of GAC subsequent to the Closing Date," regardless of whether the claim was "caused by" or "attributable to" or "relating to" pre-closing Airdock operations, then the indemnification obligations of Goodyear and GAC to Loral for pre-closing operations would be extinguished at the moment of closing and render section 6.19.1 superfluous.[13]

The cross-indemnification provisions of the APA contain clear and unambiguous lines of demarcation between pre-closing and post-closing operations. When reading the indemnification provisions of the APA as a whole, and construing those provisions to give effect to each, the only reasonable interpretation of section 6.19.2 is that the time when a claim arises is determined by when the operations causing the claim occurred, or when the operations to which the claim is related to or attributable, occurred.

### D.    Lockheed's claims against Goodyear arose prior to Closing Date

Goodyear advances several arguments in support of its position that Lockheed's claims in the Airdock Litigation arose after the Closing Date, thereby triggering Lockheed's indemnification obligations under section 6.19.2. The upshot of Goodyear's arguments is that Lockheed's statutory suit to recover remediation costs in the Airdock Litigation constitutes a "claim" "subsequent to the Closing Date" of the APA and that Lockheed's continued use of the Airdock constitutes "operations of GAC subsequent to the Closing Date." (Goodyear's Motion for Summary Judgment at 253-54.) But Goodyear's arguments and conclusions about the construction of section 6.19.2 is not

---

[13] Lockheed also contends that section 6.19.4 of the APA supports Lockheed's interpretation of the contract. Given the Court's analysis of sections 6.19.1 and 6.19.2, the Court did not need to consider this

in keeping with the "Nearest-Reasonable-Referent Canon."[14] Utilizing this principle of text interpretation, "subsequent to the Closing Date" does not modify "claim" as Goodyear's interpretation suggests; rather, it modifies "operations of GAC".

Specifically, Goodyear contends that the courts in the Prior Actions determined that the contamination of the Airdock *began* in 1997, the date that Lockheed merged with Loral and became responsible for the remediation. (Goodyear's Motion for Summary Judgment, Doc. No. 17-1 at 257.) Goodyear, however, incorrectly characterizes the record and an examination of both opinions reflects that neither the district court nor the Sixth Circuit made any such finding. Rather, both courts traced the introduction of PCBs to the Airdock site back to its construction. (Sixth Cir. Op. at 117-18, Mem. Op. at 6534.)

The language to which Goodyear points is in reference to a provision of the consent decree between Lockheed and the EPA that recites when Lockheed purportedly began discharging on the site: "June 30, 1997 (the date that Lockheed merged with Loral)." (Sixth Cir. Op. at 118.) But, as discussed in more detail below, in the Airdock Litigation, Lockheed sued Goodyear to recover for use and disposal of PCBs on the site during the decades that the Airdock was owned and operated by *Goodyear* and its predecessors/subsidiaries, all of which necessarily occurred *prior to or on* the Closing Date.

---

argument.

[14] *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: The Interpretation of Legal Texts 152 (2012).

Goodyear next contends that by ruling that Loral assumed the "liabilities of GAC" pursuant to § 2.2 of the APA, the district court in the Airdock Litigation "held that Loral's express exclusions of liability found in Section 2.2 did *not* apply." (Goodyear Reply at 351-52 (emphasis in original).) The express exclusion of liability to which Goodyear refers is section 2.2(i). In that section, the parties to the APA agreed that Loral would not assume any liabilities for which Goodyear agreed to indemnify Loral, which included claims arising from Airdock operations prior to the Closing Date. Goodyear reasons if the district court concluded that Loral assumed liability for the Airdock as an "asset of GAC," the district court also concluded that Lockheed's claim against Goodyear did not arise prior to the Closing Date. However, an examination of both the district court's and Sixth Circuit's opinions reveals that neither court discussed or made any ruling as to APA section 2.2(i), or as to when Lockheed's claim arose, in reaching the conclusion that the Airdock was an "asset of GAC" for which Lockheed assumed liability. Goodyear cannot bootstrap the opinions in the Prior Actions into a finding that Lockheed's claim against Goodyear arose after the Closing Date.

Goodyear also argues that Lockheed's federal and state environmental claims[15] in the Airdock Litigation did not arise from Goodyear's contamination of the Airdock prior to closing, but from Lockheed's post-closing remediation costs. In support of this position, Goodyear cites *Daltron Corp. v. Uniroyal Chem. Co., Inc.,* 893 F. Supp. 730, 735 (N.D. Ohio 1995), which provides that to succeed under the private action provision of CERCLA, the plaintiff must show: 1) the property is a facility under

---

[15] Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (42 U.S.C. § 9601 *et seq.*) and Ohio's Voluntary Action Program (VAP) (Ohio Rev. Code Chapter 3746).

CERCLA; 2) release of a hazardous substance occurred at that facility; 3) the release caused plaintiff to incur response costs required by law; and 4) the defendant is one of the statutory classes of persons subject to liability. Goodyear contends that Lockheed could not assert a CERCLA claim against Goodyear before Lockheed incurred remediation costs, therefore Lockheed's claims arose after closing.

While the incursion of remediation costs may be one required element in asserting a private action under CERCLA, it is not controlling of when Lockheed's claim against Goodyear arose. Lockheed claimed Goodyear caused the PCB contamination at the Airdock prior to transfer to Loral pursuant to the APA. (*See* Airdock Litigation, SAC ¶¶ 7, 33, 35, 41, 42, 43, 57, 64, 65, 67, 80, 84, 114, 141, and 191.)[16] The parties determined in the APA when a claim arises for purposes of their cross-indemnification provisions.

Both CERCLA and VAP allow a company that has contaminated a facility to transfer its liability for cleanup.[17] Goodyear successfully argued in the Prior Actions its environmental liability for the Airdock was contractually transferred to Loral by the APA as an "asset of GAC." (Sixth Cir. Op. at 119.) But the outcome of the Prior Actions is not dispositive of when Lockheed's ultimately unsuccessful claim against Goodyear arose.

---

[16] The Sixth Circuit summarized these claims as follows:

> Under [CERCLA and Ohio's VAP], the default rule is that a company that contaminates a facility is liable for cleanup costs, even if the company later sells the facility. [Citations omitted.] Lockheed therefore argued that Goodyear was liable for the Airdock's cleanup costs because Goodyear contaminated the Airdock with PCB's.

(Sixth Cir. Op. at 118-119.)

[17] Sixth Cir. Op. at 119 (citing 42 U.S.C. § 9607(e) and Ohio Rev. Code § 3746.23(F)).

Lockheed's claims against Goodyear regarding PCB cleanup at the Airdock were attributable or related to—arose from—utilization of PCB containing materials in the construction of the Airdock and the continued presence of those hazardous materials in connection with the operation of the Airdock for over 50 years prior to the Closing Date. Accordingly, the Court concludes as a matter of law that Lockheed's claims against Goodyear in the Airdock Litigation arose from the operation of the Airdock prior to—not after—the Closing Date.

Pursuant to the terms of the APA, Lockheed's claims against Goodyear in the Airdock Litigation did not arise after the Closing Date. Therefore, those claims do not trigger Lockheed's indemnification obligations under section 6.19.2. Accordingly, the Court concludes that Lockheed is entitled to summary judgment on Goodyear's claim in the instant action for indemnification pursuant to APA section 6.19.2.[18]

---

[18] In their briefing on the cross-motions, in addition to contesting the applicability of section 6.19.2 of the APA to Lockheed's Airdock Litigation claims, the parties also contested the applicability of the "American Rule" to Goodyear's one count complaint for indemnification. Under the American Rule, each party to a lawsuit generally bears its own costs and attorney fees. Goodyear vigorously argues that it is the master of its own complaint and that the Airdock Litigation was not a contract dispute between parties to the APA, and Goodyear's complaint does not assert a claim to recover litigation costs and attorney fees as a prevailing party. Rather, Goodyear claims that Lockheed stood in the shoes of a third-party asserting CERCLA and VAP claims against Goodyear which triggered the APA's indemnification provisions, and that third-party just happened to also be a party to the APA.

Goodyear's complaint and motion for summary judgment are brought pursuant to the indemnification provisions of the APA. The Court has interpreted the APA and concluded that Goodyear's one count complaint for indemnification, and motion for summary judgment on that complaint, fails as a matter of law. Accordingly, there is no reason for the Court to address the parties' disagreement as to the characterization of the Airdock Litigation as a contract dispute or applicability of the American Rule.

### III.  CONCLUSION

For the reasons discussed herein, plaintiff Goodyear's motion for summary judgment (Doc. No. 17) is DENIED, and defendant Lockheed's motion for summary judgment (Doc. No. 8) is GRANTED.

**IT IS SO ORDERED**.

Dated: September 29, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**